THE WESTERN AND ATLANTIC RAILROAD COMPANY, plaintiff in error, *vs.* LOUIS CAMP, defendant in error.

1. When it does not appear that goods transported by railroad have remained an unreasonable time in the depot of the railroad company after they have reached their destination, and the agent of the consignee, on the ensuing Saturday, inquired of the agent of the company whether the goods must then be taken out or could they remain until the next Monday, and whether there would be additional charges therefor, and the agent of the company replied that the goods could be taken out on Monday without further cost, the rule of liability on the company, which was then that of ordinary diligence as warehousemen, was not thereby changed.

2. When the general charge to the jury was correct, and substantial justice has been done by the verdict, this court will not interfere, although there may have been some error committed in the refusal to charge as requested by the losing party, provided such request, if it had been given, would not probably have affected the result.

3. This court will not undertake to reverse a judgment refusing a new trial, when the interrogatories of several witnesses were read on the trial, and were considered on the hearing of the motion for a new trial, which are not contained in the record, and it does not appear that they were immaterial and could not affect the judgment, or were omitted by consent of parties.

Railroads. Warehousemen. Diligence. Charge of Court. New trial. Practice in the Supreme Court. Before Judge McCUTCHEN. Catoosa Superior Court. July Term, 1874.

Camp brought complaint against the Western and Atlantic Railroad Company for $430 00, the value of goods shipped to him, and burned in the depot of the defendant on February 10th, 1873. The defendant pleaded the general issue.

The plaintiff proved the shipment of the goods, their non-delivery, and that they were directed to "L. Camp, care of R. J. Jones, Ringgold, Georgia."

R. J. Jones testified that he called at the depot several times for the goods, but they had not arrived; that on Tuesday or Wednesday of February court, 1873, defendant's agent told him the goods had come on that morning; that the depot was burned on the Monday night following; that he in-

The Western and Atlantic Railroad Company *vs.* Camp.

formed the agent that he would notify the plaintiff of the arrival of the goods, who replied that he wished he would; that he did not pay the freight, nor was it demanded from him by the agent; that he saw the depot burning about ten or eleven o'clock at night on February 10th; that the wind was blowing from the southeast; that the railroad track was about fifteen feet from the depot, trains passing thereon frequently, both day and night; that the roof of the depot was old, made of oak boards, and had been there eight or ten years; that the boards were rotten, some of them warped; that the roof leaked in some places; that the smoke-stacks of engines in passing would be about fifteen feet, perhaps twenty, from the edge of the roof, and nearly level with it, perhaps not quite so high.

As to the condition of the roof, distances, etc., Jones was corroborated by several witnesses, and none swore to the contrary. Some stated that it was a dangerous roof, and liable to ignite from sparks. Several testified that the wind was blowing from the southeast, which caused the sparks from the engines to fly towards the depot. Two witnesses swore that on the night of the fire, about nine o'clock, they saw two engines passing the depot emitting large quantities of sparks, some of which fell on the roof.

J. M. McKinney, the cousin and brother-in-law of the plaintiff, testified that he came to Ringgold on Saturday, the 8th of February, and asked for the plaintiff's goods, and was told by the defendant's agent that they were in the depot; that he inquired what freight was due on them, and the agent replied by handing him a piece of paper with $33 17 written thereon; that witness asked if he must take the goods out on that evening, or whether they could stay until Monday; that the agent asked him how he came to town, and on being informed that he came on horseback, told him the goods could stay until the day suggested; that witness then asked him if there would be any additional expense, to which the agent replied there would not be; that on the following Monday he came from where plaintiff lived, twenty miles in the country,

with a three-horse team and wagon, and when two miles from town noticed that the sun was about two hours high; that he came directly to town and found the depot closed; that he went to a neighboring store and inquired where the agent was, and was informed that he had probably gone to supper; that the sun was then an hour or an hour and a half high.

McKinney was corroborated by several other witnesses.

J. M. Henery, the agent of the defendant, testified that on the Monday evening alluded to he was engaged in the depot until very late receiving freights for shipment, etc. ; that he thinks he remained until after sun-down ; that he then closed the depot and went to supper just in time to get back to meet the down train; that he had to meet this train and usually got his supper before it came; that he was absent not exceeding one hour, and when he returned he remained until nine o'clock; that the evening was dark and cloudy.

Other witnesses testified as to the character of the evening, and that the agent left the depot about sun-down.

The jury found for the plaintiff.    The defendant moved for a new trial upon the following, among other, grounds :

1st. Because the court erred in charging the jury "that the defendant was bound to exercise ordinary diligence in taking care of the plaintiff's goods, and is liable for failing to take such care of the goods as every prudent man takes of his own goods; and that this applies to all of the surroundings; that they might consider the house in which the goods were stored, the roof, the liability to take fire from passing engines, and in fact all the surroundings, and say from the facts proved whether the defendant exercised ordinary diligence in keeping the plaintiff's goods, and if it did not it would be liable."

2d. Because the court erred in charging the jury that the defendant was bound to ordinary diligence in keeping all goods, and in refusing to charge that the neglect must be gross if there was a contract for the gratuitous keeping of the goods, in order to make the defendant liable for the loss.

3d. Because the verdict was contrary to the law and the evidence.

The motion was overruled and the defendant excepted.

D. A. WALKER, by J. A. W. JOHNSON, for plaintiff in error.

W. H. PAYNE, for defendant.

TRIPPE, Judge.

1. The charge of the court relieved the railroad company from the extraordinary liability that had been upon it as a common carrier, and gave the jury the rule approved in 46*th* *Georgia*, 433, to-wit: that when goods shipped by a railroad have arrived at their destination and are deposited in a place for safe keeping, the liability of the railroad company as a common carrier ceases, and that of warehouseman commences. This was the proper rule in this case. But the company claims that what passed on the Saturday evening, after the arrival of the goods at Ringgold, between its agent and the agent of defendant in error, changed its character to that of a gratuitous bailee, and from that time it was only liable for gross negligence, and that the court erred in not so charging. The goods had been in the depot four or five days. It was Saturday afternoon when the consignee's agent inquired of the company's agent if he should take them out then, or could they remain until the ensuing Monday. Upon learning that the agent of the owner came to town on horseback, he was notified by the railroad agent that the goods could remain until the next Monday and there would be no further charge on that account. It would be a very strict rule upon the owner of goods to hold that this lost him any right he then held. It was only for such a length of time as was almost a necessity, under the circumstances.

2. The whole charge of the court is not given by the reporter, nor are all the requests made by plaintiff in error to the court, to give in charge to the jury, set forth. One or two of those requests could properly have been given; but we

think substantial justice was done by the verdict, and the general charge of the court being correct, and as the requests which might have been properly submitted to the jury would not probably have affected the result, a new trial will not be granted on that account: 20 *Georgia*, 50; 37 *Ibid.*, 94, 195.

3. There is a still more serious difficulty in the way of plaintiff in error. The record shows that the interrogatories of four witnesses were read to the jury, and were considered on the hearing of the motion for a new trial. In the brief of the testimony these depositions are referred to as having been introduced on the trial, and by agreement of counsel they were to be used when the motion for a new trial was heard. From what appears in the testimony in the record, these witnesses whose interrogatories were used were cognizant of the leading and material facts of the case, and doubtless their testimony was of importance to the parties. These interrogatories are not included in the record or in the bill of exceptions, nor does it appear that they were omitted by consent of the parties. Though there was no suggestion of diminution of the record, this court would require a very clear and undoubted case before it would reverse a judgment refusing a new trial under such circumstances. All the testimony should be here unless its immateriality appears. Especially was this necessary in this case.

Judgment affirmed.